UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                                       :

MEXICO INFRASTRUCTURE FINANCE,   :
LLC,                                    :
                                         :

                          Plaintiff,   :          17-CV-6424 (VSB)
                                         :

            - against -             :       **OPINION & ORDER**
                                         :

THE CORPORATION OF HAMILTON and   :
THE BANK OF NEW YORK MELLON,     :
                                         :

                    Defendants.   :
                                         :
----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/14/2019__

Appearances:

Mark C. Zauderer
Craig S. Kesch
Flemming Zulack Williamson Zauderer LLP
New York, New York
*Counsel for Plaintiff*

Kenneth I. Schacter
Simon Chang
Morgan, Lewis & Bockius LLP
New York, New York
*Counsel for Defendant Corporation of Hamilton*

Casey D. Laffey
Lonnie E. Klein
Tsedey A. Bogale
Reed Smith LLP
New York, New York
*Counsel for Defendant The Bank of New York Mellon*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Mexico Infrastructure Finance, LLC brings this action against Defendants The

Corporation of Hamilton ("Hamilton") and The Bank of New York Mellon ("BNYM") alleging

claims for breach of contract, breach of fiduciary duty, negligence, fraud, and negligent misrepresentation against Hamilton and claims for breach of contract, breach of fiduciary duty, and gross negligence against BNYM. Before me is Defendant Hamilton's motion to dismiss on the grounds of comity, forum non conveniens, res judicata, and collateral estoppel. Also before me is Defendant BNYM's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the doctrines of comity, forum non conveniens, res judicata, and collateral estoppel do not apply under the circumstances presented by Hamilton's motion, its motion is DENIED. With regard to BNYM's motion, because Plaintiff has plausibly alleged causes of action for breach of contract and breach of fiduciary duty, and because those claims are not otherwise limited by the terms of the contract entered by the parties, BNYM's motion to dismiss the breach of contract and breach of fiduciary duty claims is DENIED, and because Plaintiff's allegations of gross negligence involve conduct directly related to BNYM's performance of the contract, BNYM's motion to dismiss the gross negligence tort claim is GRANTED.

I.   **Background**[1]

In July 2014, Plaintiff agreed to provide non-party Par-La-Ville Hotel and Residences, Ltd. ("PLV") with an $18 million loan to assist in securing financing for a development project in Hamilton, Bermuda. (Compl. ¶ 15.)[2] Various agreements governed the terms of the loan,

---

[1] I assume Plaintiff's allegations to be true for purposes of Defendant BNYM's motion pursuant to Rule 12(b)(6). *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings in Part I of this Opinion and Order. In deciding Defendant Hamilton's motion to dismiss, I rely on the pleadings and affidavits. *See Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d. Cir. 1987). Because I do not make any factual findings in favor of Defendant Hamilton with regard to the forum-selection clause, *see infra* Part III, I need not conduct an evidentiary hearing, *see New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997).

[2] "Compl." refers to Plaintiff's Complaint, filed July 19, 2017 in the Supreme Court of the State of New York, a copy of which is attached as Exhibit A to Defendant Hamilton's Notice of Removal, dated August 23, 2017. (Doc. 1.)

including an agreement to guarantee the loan ("Guarantee Agreement"), (*see* Gonzalez Aff. ¶ 7),[3] and a written escrow agreement ("Escrow Agreement"), (s*ee* Compl. ¶ 18; *see also* Escrow Agr.).[4] Pursuant to the Guarantee Agreement, Defendant Hamilton agreed to guarantee the loan in the event that PLV defaulted. (Gonzalez Aff. ¶ 7.) The Escrow Agreement set forth the terms for the disbursement of the loan. (*See generally* Escrow Agr.) Plaintiff deposited the loan funds into an escrow account ("Escrow Funds") with Defendant BNYM. (Compl. ¶ 16.) This account was established pursuant to the Escrow Agreement. (*Id.* ¶ 18.) The Escrow Agreement had four parties: Plaintiff, as the lender, PLV as the borrower, Defendant BNYM as Escrow Agent, and Defendant Hamilton.[5] (*Id.*) Pursuant to the Escrow Agreement, PLV could not access most of the Escrow Funds until after it had secured a senior loan of at least $225 million and an equity investment of at least $100 million to finance the development project. (*Id.*) The Escrow Agreement specified that the Escrow Funds could only be disbursed into a "Senior Escrow" account. (*Id.*) The Escrow Agreement also required that BNYM could disburse the Escrow Funds to PLV only after certain terms had been met. (*Id.* ¶ 20.) Among these terms was a requirement that PLV and Defendant Hamilton provide to Defendant BNYM a joint written notice that all of the conditions for release of the Escrow Funds to PLV had been met, such as securing the senior loan and establishing a Senior Escrow account. (*Id.* ¶ 22; *see also* Escrow Agr. § II ¶ 3.3.)

On October 24, 2014, PLV and Defendant Hamilton sent separate notice letters to

[3] "Gonzalez Aff." refers to the Affidavit of Xavier Gonzalez, dated March 30, 2015, a copy of which is attached as Exhibit 2 to Defendant Hamilton's motion to dismiss. (Doc. 30.)

[4] "Escrow Agr." refers to the Escrow Agreement among Mexico Infrastructure Finance, LLC and Par-La-Ville Hotel and Residences, Ltd. and the Corporation of Hamilton and the Bank of New York Mellon, as Escrow Agent, dated July 9, 2014, a copy of which is attached as Exhibit A to the Complaint. (Doc. 1-1.)

[5] Plaintiff, PLV, and Hamilton are also each individually referenced as an "Interested Party" and collectively as "Interested Parties." (Escrow Agr. at 1.)

Defendant BNYM, stating that the conditions set forth in the Escrow Agreement had been satisfied. (Compl. ¶¶ 34, 38.) Rather than identify a Senior Escrow account, each notice identified the personal bank account of PLV's directors, Michael and Yasmin McLean. (*Id.* ¶¶ 36, 38.) Five days after receiving these two notices, Defendant BNYM notified Plaintiff that it would disburse the Escrow Funds. (*Id.* ¶ 43.) Plaintiff inquired, by email, "To what account is the money being asked to be sent to?" (*Id.* ¶ 44.) Defendant did not provide any information about the account, and responded, "The account is listed on the notice provided . . . we are ok to execute." (*Id.* ¶ 45.) Defendant BNYM then disbursed the remaining Escrow Funds, in the amount of $13,749,858, to the PLV directors' personal bank account. (*Id.* ¶ 47.) PLV used the funds for personal reasons (such as purchasing an Aston Martin car and properties in the United Kingdom) and ultimately defaulted on the loan. (*Id.* at 1.)

Plaintiff has filed various actions seeking to recover the lost funds under the various agreements related to the loan. The first of those actions was filed on February 13, 2015 against Defendant Hamilton in the Supreme Court of Bermuda ("Bermuda Trial Court"), which is the court of first instance in Bermuda, to collect on the Guarantee Agreement. (Myers Decl. Ex. 1.)[6] Having found that it had no viable defense, Defendant Hamilton initially entered a confession judgment, (Myers Decl. Ex. 3), but it later moved to vacate the judgment on the grounds that the Guarantee Agreement had been *ultra vires*, (*id.* ¶ 3). Defendant Hamilton prevailed in that action, with the Bermuda Trial Court holding that "[i]n providing the Guarantee, [Hamilton] acted *ultra vires*." (Berm. Trial Ct. Op. ¶ 62.)[7] The Bermuda Trial Court carefully limited its

---

[6] "Meyers Decl." refers to the Declaration of Ronald H. Meyers in Support of Defendant Corporation of Hamilton's Motion to Dismiss the Complaint, dated December 15, 2017. (Doc. 30.)

[7] "Berm. Trial Ct. Op." refers to the opinion issued by the Supreme Court of Bermuda, In the Matter of a Consent Judgment Between Mexico Infrastructure Finance LLC and the Corporation of Hamilton Dated 27th May 2015," 2016 No: 241, dated November 18, 2016, a copy of which is attached as Exhibit 4 to the Myers Declaration. (Doc. 30-5.)

finding to the Guarantee Agreement, stating, "There may be other causes of action available to [Plaintiff] against the Corporation. This judgment does not determine that [Plaintiff] cannot recover the amount of the loan monies from [Defendant Hamilton]: merely that it cannot do so by enforcing an *ultra vires* Guarantee." (*Id.* ¶ 61.) Plaintiff appealed that decision, which was affirmed by the Court of Appeal for Bermuda ("Bermuda Appeals Court") on May 12, 2017. (*See* Berm. Appeals Ct. Op. 38 ("I am in complete agreement with the [Bermuda Trial Court's] view on the *ultra vires* issue.").)[8] Plaintiff appealed that decision to Bermuda's court of last resort, the Privy Council of the United Kingdom ("Privy Council"). (*See* Myers Decl. Ex. 6.) On January 21, 2019, the Privy Council affirmed the rulings of the Bermuda Trial Court and the Bermuda Appeals Court, finding that "the guarantee was not capable of being brought within the Corporation's powers." (*See* Privy Council Op. ¶ 59.)[9]

## II.  **Procedural History**

Plaintiff filed this action on July 19, 2017 in the Supreme Court of the State of New York, County of New York. (*See* Doc. 1, Ex. A.) On August 23, 2017, Hamilton removed the action to this Court. (Doc. 1.) After appearing at a pre-motion conference, Defendants filed motions to dismiss on December 15, 2017. (Docs. 25, 28.) Plaintiff opposed both motions on February 28, 2018. (Doc. 34.) On March 30, 2018, Defendants filed their replies. (Docs. 41, 43.) On January 25, 2019, the parties filed a joint letter to notify me that the Privy Council had entered a judgment on Plaintiff's appeal. (Doc. 44.) On February 5, 2019, Hamilton filed a letter explaining the impact of that judgment on the current motion, (Doc. 46), and on February

---

[8] "Berm. Appeals Ct. Op." refers to the to the opinion issued by the Court of Appeal for Bermuda, Civil Appeal No. 19 of 2016, dated May 12, 2017, a copy of which is attached as Exhibit 5 to the Myers Declaration. (Doc. 30-6.)

[9] "Privy Council Op." refers to the Judgment on Privy Council Appeal No 0075 of 2017, dated January 21, 2019. (Doc. 46-1.)

15, 2019, Plaintiff filed its response, (Doc. 47).  On February 19, 2019, BNYM filed a response to Plaintiff's February 15, 2019 letter, (Doc. 48), to which Plaintiff responded on February 21, 2019, (Doc. 49).

### III.    Defendant Hamilton's Motion

Hamilton seeks dismissal of Plaintiff's claims under four doctrines:  (1) comity; (2) forum non conveniens; (3) res judicata; and, (4) collateral estoppel.

### A.    *Legal Standards*

#### 1.    Comity

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  Nevertheless, under certain "exceptional circumstances," a federal district court may in its discretion choose not to exercise its jurisdiction over an action pursuant to the doctrine of international comity.  *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006).

"International comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience.'"  *Id.* at 92 (quoting *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895)).  Generally, the principles that guide a district court's determination of whether to grant comity to a parallel foreign proceeding include "the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency."  *Id.* at 94.  Specifically, the Second Circuit has articulated five factors that courts should consider:  (1) "the similarity of the parties and issues"; (2) "the interests of judicial economy"; (3) "the order in which the actions were filed"; (4) "the adequacy of the alternative forum"; and (5) "the convenience of, and

potential prejudice to, either party." *Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*, No. 12 Civ. 7249(PAE), 2013 WL 2531277, at *3 (S.D.N.Y. June 10, 2013) (citing *Royal & Sun*, 466 F.3d at 94). However, "[t]his list is not exhaustive, and a district court should examine the totality of the circumstances." *Royal & Sun*, 466 F.3d at 94 (internal quotation marks omitted).

The Second Circuit has recognized a district court's "heavy obligation to exercise jurisdiction" and that "only the clearest of justifications will warrant dismissal." *Id.* at 93 (internal quotation marks omitted). Even where comity applies, it "is not an imperative obligation of courts but rather is a discretionary rule of practice, convenience, and expediency." *Id.* at 92 (internal quotation marks omitted).

## 2. Forum Non Conveniens

The doctrine of forum non conveniens permits a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo- und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004). A district court should dismiss a complaint where, on balance, the resolution of the matter in an adequate alternative forum would be more convenient for the parties and courts and more just. *See R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir. 1991) ("The central purpose of a forum non conveniens inquiry is to determine where trial will be most convenient and will serve the ends of justice."). District courts have broad discretion in applying this principle, and typically conduct a three-step analysis in the exercise of that discretion: (1) "the degree of deference properly accorded the plaintiff's choice of forum"; (2) "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute"; and (3) the balance of "the private and public interests implicated in the choice of forum." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

### 3. Res Judicata

The doctrine of res judicata provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). A defendant may prove the defense of res judicata by showing that: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). "United States courts 'may choose to give res judicata effect to foreign judgments on the basis of comity,' but 'are not obliged' to do so." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004) (quoting *Mezitis Diorinou v. Mezitis*, 237 F.3d 133, 140 (2d Cir. 2001)); *see also Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 178–79 (S.D.N.Y. 1995) ("It is well-established that United States courts are not *obliged* to recognize judgments rendered by a foreign state, but may *choose* to give res judicata effect to foreign judgments on the basis of comity." (emphasis in original)).

### 4. Collateral Estoppel

Collateral estoppel bars re-litigation of an issue where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (internal quotation marks omitted).

### B. Discussion

#### 1. Comity

Before weighing the comity factors that are often considered by district courts, I note that the Escrow Agreement had a New York forum-selection clause. (*See* Escrow Agr. § II, ¶ 12 ("all proceedings relating [to the Escrow Agreement] shall be brought in courts located within the City and State of New York").)  Although a New York forum-selection clause "does not preclude a court from granting comity," *Allstate Life Ins. Co. v. Linter Grp., Ltd.*, 994 F.2d 996, 1000 (2d. Cir. 1993), a "valid forum-selection clause should be given controlling weight in all but the most exceptional cases," *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (internal quotation marks omitted).  A valid forum-selection clause may only "be superseded by a strong argument in favor of deference to a foreign action." *Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1129 (S.D.N.Y. 1997).  As discussed below, I find that Defendant Hamilton has not made a "strong argument in favor of deference," and therefore the forum selection clause is presumptively controlling. *See id.*

The first factor I consider is the "similarity of the parties and issues." *Ole Media Mgmt.*, 2013 WL 2531277, at *3.  Although the parties and issues need not be identical, the parties "must be substantially the same, litigating substantially the same issues in both actions." *Royal & Sun*, 466 F.3d at 94.  Two of the three parties in this lawsuit—Plaintiff and Defendant Hamilton—are parties to the proceeding before the Bermuda Trial Court ("Bermuda Proceeding").  (Berm. Trial Ct. Op. 1.)  Defendant BNYM, which has its principle place of business in New York, (Compl. ¶ 10), is not a party to the Bermuda Proceeding.  Therefore the parties are similar, but not identical.

More importantly, the issues in the Bermuda Proceeding were not "substantially the same" as the issues in this action. In the Bermuda Proceeding, the only agreement before the court was the Guarantee Agreement. (*See* Berm. Trial Ct. Op. ¶¶ 1–7, 61.) The Bermuda Trial Court considered whether Defendant Hamilton had the capacity to guarantee a loan for particular purposes. (*Id.* ¶¶ 12–33.) Finding that Defendant Hamilton did not have that capacity, the Bermuda Trial Court determined that the Guarantee Agreement was *ultra vires* and therefore unenforceable. (*Id.* ¶ 62.) Neither the Bermuda Trial Court, the Bermuda Appeals Court, nor the Privy Council considered any part of the Escrow Agreement.[10] (*See* Berm. Appeals Ct. Op. ¶ 51 (upholding the conclusion that "in providing the Guarantee, [Hamilton] acted *ultra vires*"); Privy Council Op. ¶ 1 ("The principal issue on this appeal is whether the grant by [Hamilton] of a guarantee . . . to support a borrowing by a private developer was *ultra vires* and unenforceable as it was not for a 'municipal purpose.'").) Those courts certainly did not consider the threshold issue of whether Defendant Hamilton had the capacity to enter the Escrow Agreement, nor did they consider any of the substantive issues raised by the Complaint alleging Defendant Hamilton's violation of and tortious conduct in relation to the Escrow Agreement. Moreover, the Bermuda Trial Court was careful to narrow the scope of its ruling, and specifically provided for the possibility that "[t]here may be other causes of action available to [Plaintiff] against [Defendant Hamilton]. This judgment does not determine that [P]laintiff cannot recover the amount of the loan monies from [Hamilton]: merely that it cannot do so by enforcing an *ultra vires* Guarantee."[11] (Berm. Trial Ct. Op. ¶ 61.) Defendant Hamilton has failed to demonstrate how its interpretation of the Bermuda Trial Court Opinion—that the Bermuda Trial Court found

---

[10] Indeed, none of the opinions issued by those courts even mentions the Escrow Agreement.

[11] Neither the Bermuda Appeals Court nor the Privy Council questioned the validity of this statement.

that the entire loan transaction, including the Escrow Agreement, was *ultra vires*, (Hamilton Mem. at 2)[12]—would not render Paragraph 61 of that opinion meaningless.  Accordingly, the first factor weighs strongly against comity abstention.

Second, I consider the "interests of judicial economy."  *Ole Media Mgmt.*, 2013 WL 2531277, at *3.  The only argument Hamilton makes that the interests of judicial economy weigh in favor of comity abstention is that the Bermuda courts have already decided the issue before me.  As discussed above, the Bermuda courts have not decided the issue before me.  Moreover, even if I dismiss Hamilton from this action, the case will continue here with BNYM as a Defendant, and the interests of judicial economy will be served by litigating the Escrow Agreement in a single action.  This factor also weighs strongly against comity abstention.

Third, I consider "the order in which the actions were filed."  *Id.*  The Bermuda Proceeding began more than two years before this action was filed, (*see* Myers Decl. Ex. 1 (indicating that the initial statement of claim was filed on February 13, 2015)), and it has already run its course through appeal to the Privy Council, (*see* Privy Council Op.).  This sequence weighs in favor of comity abstention.  *See Dragon Capital Partners*, 949 F. Supp. at 1128.

Fourth, I consider "the adequacy of the alternative forum."  *Ole Media Mgmt.*, 2013 WL 2531277, at *3.  To establish that an alternative forum is adequate, Defendant Hamilton must show that "defendants are amenable to service of process there, and [that] it permits litigation of the subject matter of the dispute."  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).  "Absent a fundamental obstacle to a plaintiff's recovery[,] American courts are not prone to characterizing a sovereign nation's courts as clearly unsatisfactory."  *LaSala v.*

---

[12] "Hamilton Mem." refers to the Memorandum of Law of Defendant Corporation of Hamilton in Support of Motion to Dismiss Complaint, dated December 15, 2017.  (Doc. 29.)

*UBS, AG*, 510 F. Supp. 2d 213, 222 (S.D.N.Y. 2007) (internal quotation marks omitted).  Neither party specifically addresses whether Defendant Hamilton is "amenable to process" in Bermuda (I assume that, as a Bermuda corporation, it is), and neither party addresses whether Bermuda courts would permit litigation of the subject matter of this dispute.  Instead, each makes unsupported arguments about whether Bermuda courts or New York courts *should* be deciding this case.  (Hamilton Mem. 12–13 ("Bermuda courts are far better equipped to apply and interpret its own laws as to the *vires* of a Bermuda municipality and its ramifications."); Pl. Opp. 35 ("Bermuda courts are not an adequate forum to apply and interpret New York law – which governs the Escrow Agreement.").)[13]  Nonetheless, I am aware of no "fundamental obstacle" to Plaintiff's recovery under the Escrow Agreement in Bermuda courts, and I therefore find that this factor weighs in favor of comity abstention.  *LaSala*, 510 F. Supp. 3d at 222.

Finally, I consider "the convenience of, and potential prejudice to, either party."  *Ole Media Mgmt.* 2013 WL 2531277, at *3.  First, Hamilton argues that this is "inherently and overwhelmingly a Bermuda matter" with "[n]o action by Hamilton alleged to have occurred in New York," and therefore the case should be decided by a Bermuda court.  (Hamilton Mem. 12.) This argument ignores the New York forum-selection clause that was bargained for voluntarily by all parties to the Escrow Agreement, including Defendant Hamilton.  (Escrow Agr. § II ¶ 12; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring) ("[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.").)  Hamilton further argues that the "crucial evidence and witnesses are all located in Bermuda."  (Hamilton Mem.

---

[13] "Pl. Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, dated February 28, 2018.  (Doc. 34.)

13.)  Plaintiff counters that "[n]one of BNY[M]'s or [Plaintiff]'s witnesses or documents is in Bermuda."  (Pl. Opp. 36.)  Plaintiff further argues that, as discussed above, comity abstention would force Plaintiff to "litigate its claims under the Escrow Agreement in two different jurisdictions," resulting in significant prejudice to Plaintiff.  (*Id.* at 35–36.)  Accordingly, I find that this factor weighs against comity abstention.

Although I find that the third and fourth factors weigh in favor of comity abstention, I must weigh "the considerations for and against absention" in light of my "heavy obligation to exercise jurisdiction . . . regardless of what factors are present on the other side of the balance." *Royal & Sun*, 466 F.3d at 93 (internal quotation marks omitted).  I have weighed the five traditional factors and the New York forum-selection clause, and I find that there are no "exceptional circumstances . . . that justify the surrender" of jurisdiction, particularly in light of the difference between the issues before me and the issue before the Bermuda Trial Court.  *Id.*

Accordingly, Defendant Hamilton's motion to dismiss on the grounds of comity is DENIED.

## 2.  Forum Non Conveniens

I begin my analysis with "the assumption that the plaintiff's choice of forum will stand." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001).  Certain factors weigh against deference to Plaintiff's choice of forum.  First, New York is not Plaintiff's home forum.  (Compl. ¶ 8 (Plaintiff is a Delaware Corporation with its principal place of business in Florida); s*ee also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("[T]he presumption [in favor of plaintiff's choice of forum] applies with less force when the plaintiff or real parties in interest are foreign.").)  Second, Plaintiff initially filed this case in state court, and it was subsequently removed to federal court.  S*ee Williams v. Connell*, No. 12 CV 3593, 2017 WL 2829686, at *8

(E.D.N.Y. June 29, 2017) (giving "relatively little deference" when a case originally brought in state court by plaintiffs was removed by defendants to federal court).[14]  Finally, Plaintiff voluntarily chose to do business in Bermuda.  *See Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238–39 (2d. Cir. 2004) (finding that a plaintiff could reasonably "expect that disputes over the terms of the transactions" conducted in Germany would be resolved in Germany).[15]

      None of the cases involving the factors that weigh against deference to Plaintiff's choice of forum involved a valid forum-selection clause.  Here, the Escrow Agreement that is the very subject of this lawsuit requires that all proceedings relating to the Agreement "shall be brought in courts located within the City and State of New York."  (Escrow Agr. § II ¶ 12).  Indeed, courts in this district find that such a clause weighs strongly in favor of deference.  *See e.g., Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 386 (S.D.N.Y. 2001) ("[T]he existence of a forum-selection clause also counsels strongly against a court's dismissal of an action on *forum non conveniens* grounds."); *Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1137, 1145 (S.D.N.Y. 1990) (denying dismissal on forum non conveniens grounds where the agreements at issue had a forum selection clause, "pursuant to which the . . . defendants agreed not to do exactly what they are now doing: that is, argue that . . . New York is an inconvenient forum").  Indeed, in the context of a forum non conveniens motion, a forum-selection clause will be enforced unless "(1) its incorporation was the result of fraud or overreaching; (2) the law to be

---

[14] This case was considered in the context of a motion to transfer, not a motion to dismiss under the principles of forum non conveniens.

[15] Unlike in *Carey*, where the Plaintiff had been living and working in Germany, 370 F.3d at 236, Plaintiff in this case is a Delaware limited liability company with its principal place of business in Miami Beach, Florida.  (Compl. ¶ 8.)  Furthermore, the Escrow Agreement that is the subject of this lawsuit was executed with an Escrow Agent located in New York, and the Escrow Funds were deposited in New York, (*see id.* ¶ 19); therefore, unlike in *Carey*, transactions had not all occurred in the alternative forum.

applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Martinez v. Bloomberg LP*, 740 F.3d 211, 228 (2d Cir. 2014) (internal quotation marks omitted). Defendant Hamilton does not allege that the New York forum-selection clause was the result of fraud or overreaching, it does not allege that New York law is fundamentally unfair, and it does not allege that any strong New York public policy will be contravened by enforcement of the forum selection clause. (*See* Hamilton Mem. 14–19.) Finally, although Hamilton has argued that "the crucial evidence and witnesses are all located in Bermuda," (*id.* at 13),[16] it has not made a showing that holding trial in New York would be "so difficult and inconvenient" that any party would be "deprived" their day in court. *See Martinez*, 740 F.3d at 228.

The three cases cited by Defendant Hamilton in support of its argument that "the presence of a forum selection clause in the Escrow Agreement" does not affect the forum non conveniens argument are inapposite. The first two cases involved actions that were brought in New York notwithstanding forum-selection clauses that required the agreements to be enforced in a *foreign* forum. *See Martinez*, 740 F.3d at 214 (affirming dismissal on forum non conveniens grounds where the disputed agreement included a clause that "any dispute arising hereunder shall be subject to the exclusive jurisdiction of the English courts"); *Figuieredo Ferraz e Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 387 (2d. Cir. 2011) (directing district court to dismiss case on forum non conveniens grounds where the disputed agreement included a clause stating, "The parties agree to subject themselves to the competence of the Judges and Courts of the City of Lima or the Arbitration Proceedings, as applicable"). Therefore, in those two forum

---

[16] As explained below, this argument is unfounded.

non conveniens cases, the movants urged the court to *enforce* a forum-selection clause, not ignore one, as Hamilton suggests I do here. Defendant Hamilton identifies a single case in which a New York court declined to enforce a New York forum-selection clause: *Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteres de Guat.*, 616 F. Supp. 301 (S.D.N.Y 1985). (*See* Hamilton Mem. 19 (citing *Banco Metropolitano*).) *Banco Metropolitano* is readily distinguishable because all of the parties were Guatemalan, and there were "no witnesses or documents or any evidence stated to be in New York" and "[n]one of the events underlying the [dispute had] any connection with New York." 616 F. Supp. at 305. Conversely, two of the three parties in this lawsuit are located in the United States, and one of the parties is located in New York. (Compl. ¶¶ 8, 10.) Further, some of the allegations in the complaint involve conduct that occurred in or was directed at New York. (*Id.* ¶¶ 10, 12, 19, 34, 37.)

I find that Plaintiff's choice of forum is entitled to substantial deference, because the Escrow Agreement included a valid New York forum-selection clause, Defendant Hamilton has failed to show that the clause was improper for any of the *Martinez* reasons, and the dispute has a connection to New York. This finding does "not necessarily preclude *forum non conveniens* dismissal" but it does "recalibrate the balance for purposes of the remaining analysis." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 157 (2d Cir. 2005).

In the second step of the forum non conveniens analysis, I consider "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id.* at 153. As discussed above, neither party adequately addressed this question, *see supra* Part III.B.1, but there is no indication that the Bermuda courts are not an adequate forum, *see Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 75 (2d Cir. 2003) ("An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of

the subject matter of the dispute.")[17]

In the third step of the analysis, I consider the balance of "the private and public interests implicated in the choice of forum." *Norex Petroleum*, 416 F.3d at 153. The only public factor Defendant Hamilton identifies is that "[t]his matter is, at heart a Bermudian one," and that it has "no real connection to New York." (Hamilton Mem. 16–17.) As discussed above, this case *does* have a connection to New York. Defendant Hamilton also concedes that the Escrow Agreement's forum-selection clause may mean "that only public—not private—factors may be considered." (Hamilton Mem. 19; *see also Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013) (where there is a valid forum-selection clause, "[a] court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum").) At any rate, I find that both public and private interests weigh against dismissal.

Accordingly, Defendant Hamilton's motion to dismiss on the grounds of forum non conveniens is DENIED.

### 3. Res Judicata

Defendant Hamilton must prove that: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). First, the

---

[17] However, "[t]o secure dismissal of an action on grounds of *forum non conveniens,* a movant must demonstrate the availability of an adequate alternative forum. If the movant fails to carry this burden, the *forum non conveniens* motion must be denied regardless of the degree of deference accorded plaintiff's forum choice." *Norex Petroleum*, 416 F.3d at 157 (citations omitted). Accordingly, Defendant Hamilton's failure to demonstrate that "defendants are amenable to service of process" in Bermuda and that Bermuda would permit "litigation of the subject matter of the dispute," may alone be sufficient to deny Hamilton's motion to dismiss on forum non conveniens grounds. It is Hamilton's burden to prove that, notwithstanding that the forum-selection clause mandates that the Agreement be enforced in New York courts, Bermuda courts would permit litigation of the Escrow Agreement in those courts. Hamilton has made no such showing here. In any case, a consideration of all three steps of the analysis results in dismissal, so I need not consider whether this failure alone is fatal to the motion.

Bermuda Proceeding did involve an adjudication on the merits, and the parties to the previous action (Plaintiff and Defendant Hamilton) are both parties here. (*See generally* Berm. Trial Ct. Op.) Therefore, I need only consider whether "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan*, 214 F.3d at 285.

The Bermuda Proceeding was limited to the enforcement of the Guarantee Agreement, whereas this case involves claims arising from the Escrow Agreement. Therefore, the doctrine of res judicata does not apply. *NSS Fin. Servs., LLC v. Asdon*, 37 N.Y.S.3d 207 (2016) (prior actions have no res judicata effect where such "actions were based upon separate and distinct agreements"); *see also Webpro Inc. v. Petrou*, No. 02 CIV. 3465(LMM), 2002 WL 31132889, at *4 (S.D.N.Y. Sept. 25, 2002) (applying New York law to res judicata analysis).

Accordingly, I find that the Bermuda Proceeding does not have res judicata effect on this action, and Defendant Hamilton's motion to dismiss based on the doctrine of res judicata is DENIED.

### 4. Collateral Estoppel

Defendant Hamilton argues that the Bermuda Trial Court and the Bermuda Appeals Court "directly considered and conclusively determined that Hamilton, as a municipal corporation, had no capacity to guarantee a loan for a 'commercial venture' for the financial benefit of a third party,'" (Hamilton Mem. 23), and that the Privy Council affirmed those determinations, (2/5/2019 Letter 2).[18] As discussed above, the Bermuda Trial Court only considered whether Hamilton had the capacity to enter the Guarantee Agreement. *See supra* Part III.B.1. The Bermuda Trial Court Opinion specifically stated that "[t]his judgment does not determine that Plaintiff cannot recover the amount of the loan monies from [Defendant

_____

[18] "2/5/2019 Letter" refers to the letter submitted by Defendant Hamilton on February 5, 2019. (Doc. 46.)

Hamilton]: merely that it cannot do so by enforcing an *ultra vires* Guarantee." (Berm. Trial Ct. Op. ¶ 61.)

Accordingly, Hamilton's capacity to enter into the Escrow Agreement was not raised in the Bermuda Proceeding, it was not "actually litigated," and its resolution was not "necessary to support a valid and final judgment on the merits." *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). Accordingly, Defendant Hamilton's motion to dismiss based on the doctrine of collateral estoppel is DENIED.

## IV. **Defendant BNYM's Motion**

BNYM seeks dismissal on the basis that Plaintiff's complaint fails to state a claim with regard to each of its three causes of action: (1) breach of contract; (2) breach of fiduciary duty; and (3) gross negligence.

### A. *Legal Standards*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts

alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

### B. *Discussion*

#### 1. Breach of Contract

Plaintiff alleges that the disbursement of the remaining $13,749,858 in Escrow Funds to PLV (the "Disbursement") was a violation of the Escrow Agreement, and therefore Defendant BNYM is liable for breach of contract. (Compl. ¶¶ 88–93.) Plaintiff argues that, although the Escrow Agreement required Defendant Hamilton and PLV to submit a *joint* notice to BNYM, (*see* Escrow Agr. § I ¶¶ 3.3(b), 3.4), each of them submitted a separate notice on the same day, (Compl. ¶ 34–38.) Defendant BNYM argues that because the term "joint" is not defined in the Escrow Agreement, it should be given its "ordinary usage or plain meaning," and that we might look "to the contract as a whole, to determine the parties' intent." (BNYM Reply 4 (citing *Rank Grp. Ltd. v. Alcoa Inc.*, No. 12-CV-3769 (VSB), 2018 WL 1388516, at *18 (S.D.N.Y. Mar. 19, 2018).)[19] However, I may only resolve contractual language ambiguity as a matter of law "if the

---

[19] "BNYM Reply" refers to Defendant the Bank of New York Mellon's Reply Memorandum of Law in Support of

evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000).

I first must determine whether the term "joint" is ambiguous as used in the Escrow Agreement.[20] *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993) ("Whether a contract's terms are ambiguous is a question of law decided by the court."). "Contract language is ambiguous when it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Bank of N.Y. Tr., N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 635 (S.D.N.Y. 2007) (quoting *Seiden Assoc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). I have examined the Escrow Agreement, and I note that it does not include a definition for the "joint written notice," and that it does not explicitly allow for the joint written notice to be submitted and/or signed in counterpart. (*See generally* Escrow Agr.) I therefore find that a "reasonably intelligent person" could find that the term "joint" in Paragraph 3.3 could require a single notice, submitted by both Hamilton and PLV, or separate notices submitted by each of them. *See Franklin Advisors*, 522 F. Supp. 2d at

---

Its Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), dated March 30, 2018. (Doc. 43.)

[20] Defendant BNYM argues that Plaintiff conceded that the entire Escrow Agreement is not ambiguous during a conference before me on November 13, 2017. (*See* BNYM Mem. 10 n.3.) First, BNYM's argument fails because Plaintiff's counsel was clearly discussing the Exculpatory Clause and not the Escrow Agreement in its entirety. Second, on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), I may only consider the Complaint, any documents attached to it as exhibits or incorporated by reference, and any documents that are "integral" to the Complaint. *See Clybourn v. Spiderbands LLC*, No. 18 Civ. 03688(ER), 2018 WL 6528234, at *2 (S.D.N.Y. Dec. 12, 2018). Defendant BNYM has made no showing that the transcript of the November 13, 2017 conference is "integral" to the Complaint, and therefore I do not consider it for purposes of this motion. "BNYM Mem." refers to Defendant the Bank of New York Mellon's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), dated December 15, 2017. (Doc. 26.)

635.

Having found that the term "joint" is ambiguous, I am obligated to resolve that ambiguity in Plaintiff's favor. *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. fur Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015) ("On a motion to dismiss a breach of contract claim, 'we should resolve any contractual ambiguities in favor of the plaintiff.'" (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005))); *see also Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 116 (2d Cir. 1994) (stating that "when a contract is ambiguous, its interpretation becomes a question of fact"). I therefore find that Plaintiff has adequately alleged that Defendant breached the Escrow Agreement by disbursing the Escrow Funds before receiving "joint notice" from Hamilton and PLV. Because Plaintiff's breach of contract claim survives on this basis alone, I need not consider Plaintiff's other arguments (e.g., that the notices were facially insufficient). (*See* Pl. Opp. 13–16.)

Accordingly, Defendant BNYM's motion to dismiss the breach of contract claim is DENIED.

### 2. Breach of Fiduciary Duty

Defendant BNYM argues that its adherence to the terms of the Escrow Agreement defeats a claim for breach of fiduciary duty as a matter of law. (*See* BNYM Mem. 13 (citing *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 729 (S.D.N.Y. 2014) (an escrow agent that "has acted in accordance with its obligations under the escrow agreement . . . has not breached its fiduciary duty")).) Because, as discussed above, I cannot find as a matter of law that Defendant BNYM complied with the terms of the Escrow Agreement, I similarly cannot find as a matter of law that it did not breach its fiduciary duty to Plaintiff.

Accordingly, Defendant BNYM's motion to dismiss the breach of fiduciary duty claim is

DENIED.

### 3. Gross Negligence

Defendant BNYM first argues that its compliance with the Escrow Agreement defeats allegations of gross negligence. (BNYM Mem. 14.) This argument is without merit because I found above that Plaintiff has adequately alleged that Defendant did not comply with the terms of the Escrow Agreement. *Cf. OSFI Fund II, LLC v. Can. Imperial Bank of Commerce*, 82 A.D.3d 537, 539 (N.Y. App. Div. 1st Dep't 2011) (dismissing a gross negligence claim where defendant was in compliance with the parties' unambiguous agreements).

Defendant further argues that it cannot be held liable in tort for the gross negligence claim because it is duplicative of the breach of contract claim. (BNYM Mem. 15.) Under New York law, "claims for gross negligence . . . sound in contract rather than tort" where Defendant "would have had no duty to plaintiffs" not to engage in the alleged conduct absent the contract. *OSFI Fund II, LLC*, 82 A.D.3d at 539. "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).

Plaintiff has not alleged any circumstances extraneous to Defendant BNYM's performance of its duties under the Escrow Agreement that would establish a duty owed by Defendant BNYM to Plaintiff.[21] *See Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (1992) ("A legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship. Professionals, common carriers and bailees, for example, may be

---

[21] One of the elements of gross negligence under New York law is "the existence of a duty." *See E. Meadow Driving Sch., Inc. v. Bell Atl. Yellow Pages Co.*, 708 N.Y.S.2d 701, 703 (2000). The Escrow Agreement specifically limits the "duties, responsibilities, and obligations" of BNYM to those "expressly set forth" in the Agreement, and requires that "no duties, responsibilities or obligations shall be inferred or implied." (Escrow Agr. § II ¶ 1.)

subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties.")  Although Plaintiff adequately alleges that Defendant BNYM engaged in grossly negligent conduct, *see infra* Part IV.B.4, those allegations involve conduct directly related to BNYM's performance of the contract, and will therefore sound in contract, not in a separate tort claim.

Accordingly, Defendant BNYM's motion to dismiss Plaintiff's gross negligence claim is GRANTED.

### 4.  Exculpatory Clause

Finally, Defendant BNYM argues in the alternative that, even if Plaintiff's claims are adequately alleged, BNYM's liability is limited by Section II, Paragraph 4(a) of the Escrow Agreement (the "Exculpatory Clause").  (BNYM Mem. 16–17.)  The Exculpatory Clause states, in pertinent part:

> [Defendant BNYM] shall not be liable for any action taken or omitted or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder in the absence of gross negligence or willful misconduct on its part.  In no event shall [Defendant BNYM] be liable (i) for acting in accordance with or relying upon (and shall be fully protected in relying upon) any instruction, notice, demand, certificate or document from any Interested Party, any entity acting on behalf of any Interested Party or any other person or entity which it reasonably believes to be genuine.

(Escrow Agr. § II ¶ 4(a).)

Plaintiff and Defendant BNYM offer opposite interpretations of the interaction between the first and second sentences of the Exculpatory Clause.  Under BNYM's interpretation, the first sentence sets forth the circumstances under which it may be held liable for willful misconduct/gross negligence, and the second sentence sets forth the circumstances under which it may *never* be held liable—even in the presence of willful misconduct/gross negligence—because the words "[i]n no event" are an absolute limit on liability.  (BNYM Mem. 17.)  BNYM

argues that any other interpretation would render the second sentence meaningless. (*Id.*) Under Plaintiff's interpretation, the first sentence means that Defendant is liable for any action taken pursuant to the Escrow Agreement that constitutes willful misconduct or gross negligence. (Pl. Opp. 22.) Plaintiff argues that any other interpretation "would render the 'gross negligence' exclusion superfluous." (*Id.* at 23.)

These interpretations must be read in light of the New York public policy that an exculpatory clause may not protect a party from liability for grossly negligent conduct. *See Sommer*, 79 N.Y.2d at 554 (holding that, in New York, "a party may not insulate itself from damages caused by grossly negligent conduct" through an exculpatory clause); *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384–85 (1983) ("[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances . . . . [I]t will not apply to exemption of willful or grossly negligent acts.") Given this public policy, and drawing all reasonable inferences in Plaintiff's favor, I find that Plaintiff's interpretation is at least reasonable. Therefore, so long as Plaintiff has alleged gross negligence or willful misconduct, the Exculpatory Clause does not bar Plaintiff's other claims.

In the context of limited liability in a commercial contract, to plead gross negligence, Plaintiff must allege "conduct that evinces a reckless indifference to the rights of others." *Sommer*, 79 N.Y.2d at 554. Plaintiff alleges that the notices from Defendant Hamilton and PLV were facially deficient because they did not identify a "Senior Escrow" account, as required by the Escrow Agreement. (Compl. ¶ 43.) Plaintiff also alleges that, before the funds were disbursed, Plaintiff alerted BNYM to the possibility that the account listed on the notices may not satisfy the terms of the Escrow Agreement, and BNYM disbursed the funds anyway. (*Id.* ¶¶ 43–47.) Even if I were to find that Defendant BNYM had strictly adhered to the terms of the

Escrow Agreement,[22] Plaintiff has adequately alleged that BNYM's performance of the Agreement was grossly negligent because it was recklessly indifferent to the rights of Plaintiff under the Escrow Agreement (i.e., that the escrow funds only be disbursed to a Senior Escrow account). *See Sommer*, 79 N.Y.2d at 554; *see also Kalisch-Jarcho*, 58 N.Y.2d at 385 (holding that an exculpatory clause is unenforceable when a party's conduct is grossly negligent because "it betokens a reckless indifference to the rights of others").[23]

Accordingly, Defendant BNYM's motion to dismiss the Complaint under the Exculpatory Clause is DENIED.

### V.    Conclusion

For the reasons stated above, Defendant Hamilton's motion to dismiss the complaint is DENIED, and Defendant BNYM's motion to dismiss is DENIED as to the breach of contract claim, the breach of fiduciary duty claim, and the Exculpatory Clause, and GRANTED as to the gross negligence claim.  Defendants shall file answers to the Complaint within three weeks of the entry of this Opinion & Order, and I will set a date for an initial pre-trial conference after

---

[22] I need not—and do not—make that finding here.

[23] The fact that I am dismissing Plaintiff's gross negligence cause of action as duplicative of the breach of contract claim does not impact my analysis, because the issue is whether there are allegations supporting a finding of gross negligence, not whether Plaintiff has asserted a cause of action for gross negligence sounding in tort independent of their breach of contract claim.

Defendants file their answers.  The Clerk of Court is respectfully directed to terminate the

pending motions at Documents 25 and 28.

SO ORDERED.

Dated: March 14, 2019
      New York, New York

Vernon S. Broderick
United States District Judge