```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:    8/7/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                        :

MEXICO INFRASTRUCTURE FINANCE,  :
LLC,                                :
                        :
              Plaintiff,   :        17-cv-6424 (VSB)
                        :
        - against -      :      **OPINION & ORDER**
                        :
                        :
THE CORPORATION OF HAMILTON and :
THE BANK OF NEW YORK MELLON.,  :
                        :
           Defendants.  :
                        :
--------------------------------------------------------X

Appearances:

Mark C. Zauderer
Craig S. Kesch
Grant Alan Shehigian
Flemming Zulack Williamson Zauderer LLP
New York, New York
*Counsel for Plaintiff*

Kenneth I. Schacter
Simon Chang
Elizabeth Irene Buechner
Morgan, Lewis & Bockius LLP
New York, New York
*Counsel for Defendant The Corporation of Hamilton*

Casey D. Laffey
Lonnie E. Klein
Reed Smith LLP
New York, New York

Tsedey A. Bogale
Morrison Cohen LLP
New York, New York
*Counsel for Defendant The Bank of New York Mellon*

VERNON S. BRODERICK, United States District Judge:

Before me is Defendant The Bank of New York Mellon's ("BNYM") motion for judgment on the pleadings, (Docs. 76, 77), and Defendant The Corporation of Hamilton's ("Hamilton," and together with BNYM, "Defendants") motion for summary judgment and/or judgment on the pleadings, (Docs. 88, 89). For the following reasons, Defendants' motions are GRANTED IN PART and DENIED IN PART.

## I.   **Background and Procedural History**

I assume the parties' familiarity with the factual background of this case summarized in my motion to dismiss Opinion & Order dated March 14, 2019 ("MTD Order"). (*See* Doc. 50, at 2–5.) In that Opinion & Order, I denied Hamilton's motion to dismiss the complaint based on the doctrines of comity, forum non conveniens, res judicata, and collateral estoppel, and further denied BNYM's motion to dismiss Plaintiff's breach of contract and breach of fiduciary duty claims, but granted BNYM's motion to dismiss Plaintiff's gross negligence claim as duplicative of the breach of contract claim. (*See generally* Doc. 50.)

On April 18, 2019, Hamilton filed its answer to Plaintiff's complaint, (Doc. 56), and on May 3, 2019, BNYM filed its answer, (Doc. 61). On July 2, 2019, BNYM filed its motion for judgment on the pleadings, supported by a memorandum of law and a declaration. (Docs. 76–78.) On August 16, 2019, Plaintiff filed its memorandum of law in opposition to the motion, supported by a declaration. (Docs. 83–84.) Briefing on BNYM's motion for judgment on the pleadings was complete when BNYM filed a reply memorandum of law on September 16, 2019. (Doc. 85.)

On September 27, 2019, Hamilton filed its motion for summary judgment and/or judgment on the pleadings, supported by a memorandum of law, multiple declarations with

exhibits, and a Local Rule 56.1 statement.  (Docs. 88–92.)  On December 20, 2019, Plaintiff filed

its memorandum of law in opposition to Hamilton's motion, as well as declarations with

exhibits, and its Local Rule 56.1 counterstatement.  (Docs. 102–106.)  Briefing on Hamilton's

motion for summary judgment and/or judgment on the pleadings was complete when Hamilton

filed a reply memorandum of law on February 14, 2020 supported by multiple declarations.

(Docs. 111–115.)  Hamilton filed a supplemental briefing letter on February 27, 2020, and

BNYM filed a supplemental briefing letter on March 4, 2020.  (*See* Docs. 118, 119.)

## II.   <u>Legal Standards</u>

### A.  *Rule 12(c):  Judgment on the Pleadings*

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay

trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard for

addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the

standard used in evaluating a motion to dismiss under Rule 12(b)(6).  *See, e.g., L–7 Designs, Inc.*

*v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011); *Bank of New York v. First Millennium, Inc.*,

607 F.3d 905, 922 (2d Cir. 2010).  Thus, in deciding a motion for judgment on the pleadings, a

district court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable

inferences" in favor of the non-movant, *First Millennium, Inc*., 607 F.3d at 922, and to survive a

motion pursuant to Rule 12(c), a complaint must "contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face," *Hayden v. Paterson*, 594 F.3d 150,

160 (2d Cir. 2010).  Under Rule 12(c), a party is entitled to judgment on the pleadings "only if it

has established that no material issue of fact remains to be resolved and that it is entitled to

judgment as a matter of law."  *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir.

1990) (internal quotation marks omitted); *see Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639,

642 (2d Cir. 1988) (noting that judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings").

On a Rule 12(c) motion, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs*, 647 F.3d at 422 (internal quotation marks omitted).  The complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Id.* (internal quotation marks omitted).[1]

### B.  *Rule 56(a):  Summary Judgment*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[ ]'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual

---

[1] In its opposition to BNYM's motion for judgment on the pleadings, Plaintiff argues that "[h]aving already unsuccessfully moved to dismiss under Rule 12(b)(6), [BNYM] may not use a 12(c) motion as 'an opportunity to re-litigate issues raised and decided in a motion to dismiss.' *Estep v. City of Somerset, Ky.*, No. 10-286-ART, 2011 WL 845847, at *2 (E.D. Ky. Mar. 8, 2011)."  (Doc. 83, at 10.)  Although BNYM "could have raised [its] current arguments in their Rule 12(b)(6) motion, it is generally permitted by Rule 12(h)(2) to bring successive motions challenging the sufficiency of a claim, the first under 12(b)(6) and the second, after the Answer has been filed, under Rule 12(c)." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 266 n.2 (S.D.N.Y. 2013) (citing Fed. Prac. & Proc. Civ. § 1385 ("However, even though a Rule 12(b) motion has been made and a second Rule 12(b) motion is not permitted, the three defenses listed in Rule 12(h)(2) may be raised on a motion under Rule 12(c) for judgment on the pleadings, on a summary judgment motion, or at trial.")), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015); *see also Santos v. District Council of New York City and Vicinity of United Brotherhood of Carpenters and Joiners of America, AFL–CIO*, 619 F.2d 963, 967 n. 4 (2d Cir.1980) ("By the express terms of Rule 12(h)(2), a 12(b)(6) defense 'may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits,' and, by the express terms of Rule 12(g), is not waived by failure to include it in a Rule 12 motion raising other defenses.").

disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248.

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id*. at 256 (citation omitted), and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, a court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citations and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary

judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

Nevertheless, "a plaintiff must provide more than conclusory allegations to resist a motion for

summary judgment."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  The ultimate

inquiry is "whether the evidence can reasonably support a verdict in plaintiff's favor."  *James v.

N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

### III.   Discussion

#### A.  *BNYM's Motion*

##### 1.  **Contract Ambiguity**

In my MTD Order, I concluded that the "joint written notice" clause in the parties'

Escrow Agreement[2]—which established a precondition for the disbursement of Plaintiff's loan to

non-party Par-La-Ville Hotel and Residences, Ltd.—was ambiguous, and accordingly denied

BNYM's motion to dismiss Plaintiff's breach of contract claim.  (*See* MTD Order 20–22.)  As

part of that finding, I noted that "[c]ontract language is ambiguous when it is 'capable of more

than one meaning when viewed objectively by a reasonably intelligent person who has examined

the context of the entire integrated agreement and who is cognizant of the customs, practices,

usages and terminology as generally understood in the particular trade or business.'"  (*Id.* at 21

(*quoting Bank of N.Y. Trust, N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 635 (S.D.N.Y.

2007) (*quoting Seiden Assoc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)))).  I

"examined the Escrow Agreement" pursuant to this standard, and rendered my conclusion that

the "joint notice" provision "could require a single notice, submitted by both Hamilton and PLV,

or separate notices submitted by each of them," only after considering the relevant contract

---

[2] This agreement refers to the Escrow Agreement among Mexico Infrastructure Finance, LLC, Par-La-Ville Hotel and Residences, Ltd., the Corporation of Hamilton, and the Bank of New York Mellon, as Escrow Agent, dated July 9, 2014, a copy of which is attached as Exhibit A to the Complaint.  (Doc. 1-1 Ex. A ("Escrow Ag.").)

language in its entirety.  (MTD Order 20–22.)

BNYM now argues that my MTD Order did not resolve "whether the Escrow Agreement otherwise contemplates receipt of two notices in satisfaction of the joint written notice requirement."  (Doc. 77, at 9–10.)  The basis for BNYM's argument is that section I, paragraph 3.4 of the Escrow Agreement required BNYM to disburse funds "after receiving written ***notices*** in accordance with clauses 3.3(a) and (b)."  (*Id.* at 10 (quoting Escrow Ag. § 1, ¶ 3.4 (emphasis in original).)  BNYM argues that because section I, paragraph 3.3(a) makes no mention of any notice, the "notices" language "can only refer to the 'joint written notice' requirement in section I, paragraph 3.3(b)," resolving any ambiguity as to whether the agreement permitted Hamilton and PLV to submit two separate notices prior to BNYM's release of Plaintiff's funds.  (*Id.*)

BNYM's argument is unpersuasive at this stage, where I must resolve all reasonable inferences in favor of the nonmovant.  First, BNYM's argument is not new.  In fact, BNYM originally quoted the "written notices" language from the Escrow Agreement in its motion to dismiss, (*see* Doc. 26, at 5), and I previously considered this section of the Escrow Agreement before concluding that the "joint written notice" language was ambiguous.  Second, I reject BNYM's premise that paragraph 3.3(a) makes no mention of any notice.  In fact, paragraph 3.8 of the Escrow Agreement details PLV's obligation to "designate[] by written notice" a permanent lender "as part of the deliverables in accordance with subsection 3.3(a) . . . ."  (Escrow Ag. § I, ¶ 3.8.)  And third, even if paragraph 3.3(a) of the Escrow Agreement did not refer to any "notice," I reject BNYM's proffered inference that "written notices" "can only refer to the 'joint written notice' requirement in section I, paragraph 3.3(b)," at least to the extent BNYM implies that the language can only refer to the form of such notice, as opposed to its substance.  (Doc. 77, at 10.)  Section I, paragraph 3.3(b) requires "joint written notice to

[BNYM] (i) stating that the documents delivered pursuant to subsection 3.3(a) [] are approved by [Hamilton] . . . , and (ii) authorizing the disbursement to the Senior Escrow."  (Escrow Ag. § 1, ¶ 3.3(b).)  The "written notices" language in paragraph 3.4 could thus refer to the fact that the "joint written notice" required notice of multiple facts:  first, that the underlying documentation was acceptable to Hamilton, and second, that disbursement was authorized.  BNYM's argument that paragraph 3.4 "makes clear that two notices (plural) were contemplated and that, together, those notices constitute the 'joint written notice' in [s]ection I, paragraph 3.3(b)," (Doc. 77, at 10), is therefore not necessarily unpersuasive; however, the language cited by BNYM could reasonably refer to the substance of the joint written notice, which is plural in nature, and not necessarily its form.[3]

Accordingly, I deny BNYM's argument that the Escrow Agreement's "joint written notice" language unambiguously permitted Hamilton and PLV to submit two separate notices prior to BNYM's release of Plaintiff's funds.

## 2.   Proximate Causation & Lack of Damages

BNYM seeks dismissal of Plaintiff's breach of contract claim arguing that none of BNYM's alleged actions could be considered the proximate cause of Plaintiff's alleged loss given the independent, intervening acts of PLV's principal, Michael MacLean.  The Complaint alleges, however, that "[b]y ignoring the facially obvious defects in the Notices, failing to address MIF's inquiries regarding the account to which [BNYM] intended to disperse more than $13 million of MIF's funds, and failing to confirm that the funds were being directed to a 'Senior

---

[3] BNYM further argues that reading the joint written notice language to require the submission of a single joint notice is not commercially reasonable.  (*See* Doc. 77, at 11.)  However, the Escrow Agreement contains other provisions in which multiple parties were possibly required to submit a single notice to BNYM.  (*See e.g.*, Escrow Ag. § 1, ¶ 3.3(d) (stating that a minimum "Final Amount" of funds "shall at all times remain in Escrow until [BNYM] receives written ***notice*** from the Interested ***Parties*** that the loan is paid in full.") (emphasis added).)

Escrow Account,'" BNYM breached the Escrow Agreement and "[a]s a consequence of [BNYM]'s improper release of the Escrow Funds to the PLV Director's Personal Account, over $13.7 million of MIF's funds were dissipated and diverted."  (Doc. 1-1 ¶¶ 50–51.)  Plaintiff argues that:

> there is at the very least a question of fact as to whether the theft of MIF's funds was a reasonably foreseeable consequence of [BNYM] having disbursed those funds to the personal bank account of PLV's principals (the MacLeans) instead of to a Senior Escrow account as the Escrow Agreement required.  There was a reason why MIF deposited its funds with an Escrow Agent to hold and safeguard in an escrow account; there was a reason why the balance of those funds was not permitted to be released until certain requirements were met and a Senior Escrow was established; and there was a reason why MIF sought information about the Senior Escrow and inquired as to whether [BNYM] conducted any due diligence when MIF was informed that the funds would be released.

(Doc. 83, at 16–17.)  I agree with Plaintiff, and cannot render a judgment at this stage without additional discovery regarding the foreseeability of Michael MacLean's action, and, more specifically, the scope of BNYM's knowledge of the risk that Michael MacLean could divert Plaintiff's funds if BNYM did not comply with its alleged contractual duties.

"[T]he proximate cause test may still be met even when 'acts of a third person intervene between the defendant's conduct and the plaintiff's injury,' provided that 'the intervening act is a normal or foreseeable consequence of the situation created by the defendant's [actions].'" *Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 447 (S.D.N.Y. 2018), *aff'd*, 777 F. App'x 531 (2d Cir. 2019) (quoting *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980)); *cf. In re Sept. 11 Litig.*, 280 F. Supp. 2d 279, 302 (S.D.N.Y. 2003) (stating in the tort context, "[g]enerally, an intervening intentional or criminal act severs the liability of the original tortfeasor.  But that doctrine has no application when the intentional or criminal intervention of a third party or parties is reasonably foreseeable." (internal quotation marks and citation omitted).) BNYM's motion ignores this legal standard, and instead posits that "MIF's argument that the

9

contractual requirements were important and designed to prevent loss [] is irrelevant to whether its losses were proximately caused by [BNYM's] disbursement of funds, or by the independent, intervening acts of Michael M[a]cLean."  (Doc. 85, at 7.)[4]  BNYM's argument misses the mark, because if Plaintiff bargained for the Escrow Agreement's contractual requirements to minimize a foreseeable risk that MIF's funds could be misappropriated without such contractual safeguards, then the acts of Michael MacLean could arguably be considered a normal or foreseeable consequence of the failure to heed such safeguards, rendering BNYM's alleged breaches of the Escrow Agreement the proximate cause of Plaintiff's damages.  "The answer to this question, taking into account the intervening acts . . . of [MacLean], is appropriately left to the finder of fact" after consideration on a fuller record.  *Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc*., No. 11 Civ. 0505(CM)(FM), 2011 WL 2610661, at *7 (S.D.N.Y. June 27, 2011).

### 3.   Ratification, Waiver, and Estoppel Affirmative Defenses

BNYM argues that because Plaintiff was emailed copies of the notices authorizing BNYM's disbursement of the escrowed funds, and did not object to the nature of the notices or the disbursement, Plaintiff's claims are defeated by the affirmative defenses of ratification, waiver, and estoppel.  I "may consider affirmative defenses on the basis of the pleadings, so long as 'the defense appears on the face of the complaint.'"  *In re Lehr Constr. Corp*., 666 F. App'x 66, 68 (2d Cir. 2016) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003)).  However, as Plaintiff states in its

---

[4] BNYM's motion states that because the "Escrow Agreement provided for disbursement of the Escrowed Funds in two stages," and "[h]aving made the First Disbursement without issue or complaint [], there is no basis for MIF's allegation that Mr. Maclean's alleged theft of the Second Disbursement was foreseeable."  (Doc. 77.)  Although these facts will likely be relevant to proving foreseeability, or a lack thereof, the contractual requirements for issuing the First Disbursement differ significantly from the requirements regarding the Second Disbursement, (*see* Escrow Ag. § I, ¶¶ 3.1–3.4), raising factual questions that cannot be resolved at this stage.

opposition, the affirmative defenses of ratification, waiver, and estoppel require a defendant to demonstrate that the plaintiff had full knowledge of the material facts regarding the defendant's conduct.  *See Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 588 (S.D.N.Y. 2018) ("[R]atification must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language . . . ." (internal quotation marks omitted)); *Sirignano v. Chicago Ins. Co.*, 192 F. Supp. 2d 199, 207 (S.D.N.Y. 2002) ("[W]aiver . . . is a voluntary and intentional relinquishment of a known right . . . and cannot be found unless there was full knowledge of the facts upon which the existence of the right depends . . . ." (internal quotation marks and citations omitted)); *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 395 (E.D.N.Y. 2018) ("[T]he party seeking estoppel must demonstrate, with respect to himself, a lack of knowledge of the true facts; reliance upon the conduct of the party estopped; and a prejudicial change in position . . . and, in some situations, knowledge, actual or constructive, of the real facts" by the party against whom estoppel is sought (internal quotation marks and citations omitted)).  BNYM does not contest that to prove its affirmative defenses, Plaintiff's full knowledge of defendant's conduct must be evident on the face of the pleadings; rather, BNYM argues that Plaintiff indeed had full knowledge of the fact that BNYM received "joint written notice" from Hamilton and PLV in the form of two separate documents as opposed to one.  On this basis, BNYM argues that Plaintiff's breach of contract claim should be dismissed.

Reviewing the pleadings, however, whether Plaintiff had full knowledge of the fact that the "joint written notice" was provided in two separate documents is not sufficient to grant BNYM's motion for judgment on the pleadings regarding Plaintiff's entire breach of contract claim.  First, although the email attached to Plaintiff's complaint makes clear that Plaintiff was

informed of BNYM's "receipt of [] two [] documents" as opposed to one, (Doc. 1-1 Ex. D, at 2),

there is still a factual dispute concerning whether Plaintiff was fully aware of the nature and

contents of the notices as contemplated by the Escrow Agreement.  Indeed, the Complaint states

that "MIF was not contemporaneously provided with copies of the Notices or the supporting

documents, and had no way of knowing if the account to which PLV and Hamilton requested

MIF's Escrow Funds be sent was in fact a qualified Senior Escrow account or if PLV had even

secured a Permanent Loan." (Doc. 1-1, ¶ 46.)  Plaintiff's response to BNYM's email where it

asks for additional information corroborates this knowledge gap, as Plaintiff (i) asked for details

about the account to which the money was being sent; (ii) asked whether BNYM had conducted

a know your customer assessment on the account; and (iii) requested BNYM's verbal

confirmation of the disbursement request account information. (Doc. 1-1 Ex. D, at 1.)  Thus,

even if Plaintiff had full knowledge regarding a possible breach of the "joint written notice"

provision in the Escrow Agreement, this would not defeat Plaintiff's entire breach of contract

claim, which also rests on other provisions of the Escrow Agreement and BNYM's alleged

breaches of those provisions.

     Accordingly, BNYM's affirmative defenses fail at this stage.

### 4. Duplicative Breach of Contract and Breach of Fiduciary Duty Claims

     BNYM seeks a judgment on the pleadings that Plaintiff's breach of fiduciary duty claim

is duplicative of its breach of contract claim.  In light of the Escrow Agreement, I find that

Plaintiff's breach of fiduciary duty claim against BNYM is duplicative of its breach of contract

claim.

     "Under New York law, an escrow agreement creates a fiduciary relationship between the

escrow agent and the parties to the escrow transaction." *Qube Films Ltd v. Padell*, No. 13-CV-

8405 (AJN), 2016 WL 881128, at *4 (S.D.N.Y. Mar. 1, 2016) (quoting *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 728 (S.D.N.Y. 2014) (citing *Greenapple v. Capital One, N.A.*, 939 N.Y.S.2d 351, 352 (1st Dep't 2012))); *see also Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 300 (S.D.N.Y. 2019) ("[A]n escrow agent has fiduciary obligations as escrowee." (citation omitted)).  However, "New York courts have repeatedly noted that '[a]n escrow agreement is a contract' like any other."  *H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 363 (S.D.N.Y. 2009) (quoting *Egnotovich v. Katten Muchin Zavis & Roseman LLP*, 856 N.Y.S.2d 497 (N.Y. Sup. Ct. 2008); *see also Animalfeeds Int'l, Inc. v. Banco Espirito Santo E Comercial De Lisboa*, 420 N.Y.S.2d 954, 957 (N.Y. Sup. Ct. 1979) ("An escrow agreement, while imposing a fiduciary relationship, . . . is in essence a contractual undertaking.").  For this reason, parties to an escrow agreement "cannot impose upon [the escrow agent] any obligations in addition to its limited duties under the express terms of its contract."  *Qube Films Ltd*, 2016 WL 881128, at *4; *Id.* (quoting *H & H Acquisition Corp.*, 669 F. Supp. 2d at 363).  Instead, the "scope of an Escrow Agent's fiduciary duty is defined by the scope of its contractual duty under the Escrow Agreement."  *Id.*; *see also Ray Legal*, 37 F. Supp. 3d at 729 (if an Escrow Agent "act[s] in accordance with its obligations under the escrow agreement, it has not breached its fiduciary duty"); *T.T.S.G., Inc. v. Kubic*, 639 N.Y.S.2d 825, 826 (1st Dep't 1996) (noting that "[a]s escrow agent, defendant owe[d] a fiduciary duty to the parties to the transaction" and that an escrow agent breaches its fiduciary duties if it "pay[s] escrow funds to others . . . rather than meeting [its] obligation" under the escrow agreement ); *Greenapple*, 939 N.Y.S.2d at 355 ("[A]n escrow agent has a duty not to deliver the monies in escrow except upon strict compliance with the conditions imposed by the controlling agreement.").  Furthermore, New York courts adopt the general rule that "where parties have

entered into a contract, courts look to that agreement to discover . . . the nexus of [the parties']

relationship . . . ." *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19–20 (2005) (internal

quotation marks omitted).

"A breach of fiduciary duty claim is duplicative when it is based on allegations of

fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim." *N.*

*Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (citation

and quotation marks omitted); *see also Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*, 43

F. Supp. 3d 236, 244 (S.D.N.Y. 2014) (dismissing fiduciary duty claim as duplicative of breach

of contract claim because "plaintiffs do not allege or point to a single fact supporting the

proposed breach of fiduciary duty claim that is not already included in the proposed breach of

contract claim"); *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 Civ. 4362(PKC),

2012 WL 1890388, at *9 (S.D.N.Y. May 23, 2012) ("[T]o the extent that the Complaint's

fiduciary duty claim is premised upon failure to perform under the agreed terms of a contract, the

plaintiffs fail to state a claim under New York law." (citing *Celle v. Barclays Bank P.L.C.*, 48

A.D.3d 301, 302 (1st Dep't 2008) ("The breach of fiduciary duty claim was properly dismissed

as the agreement covers the precise subject matter of the alleged fiduciary duty.") (quotation

marks and alterations omitted))).   Therefore, a fiduciary duty claim that is "merely a restatement,

albeit in slightly different language, of the [] contractual obligations asserted in [a] cause of

action for breach of contract . . . is merely duplicative of [the] breach of contract claim [and]

cannot stand." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d

162, 193 (S.D.N.Y. 2011) (citation omitted).   Plaintiff's only authority to the contrary states that

"an escrow agent can be held liable for breach of the escrow agreement as well as for breach of

fiduciary duty as escrowee." *Barbi v. Dweck*, 2004 NYLJ LEXIS 4964, at *9 (Sup. Ct. N.Y.

Cty. Jan. 8, 2004) (citing *Takayama v. Schaefer*, 240 A.D.2d 21, 25 (2d Dep't 1998)).  However, *Takayama*, the case on which Plaintiff's authority relies, clearly stated that the case involved a situation "where the escrow agreement [was] silent as to [the escrow agent's] duties." *Takayama*, 240 A.D.2d at 22.  Thus, although the case posited that "[a]n escrow agent not only has a contractual duty to follow the escrow agreement, but additionally becomes a trustee of anyone with a beneficial interest in the trust . . . with the duty not to deliver the escrow to anyone except upon strict compliance with the conditions imposed," *id.* at 25 (internal quotations omitted), because the escrow agreement in question imposed no relevant conditions, the breach of fiduciary duty claim necessarily did not rest on provisions contained in the contract, and was therefore not duplicative.

Here, however, the parties' Escrow Agreement is not silent concerning BNYM's duties, and imposes various conditions defining BNYM's duties, all of which are encompassed by Plaintiff's breach of contract claim.[5]  Thus, because both claims are premised upon the same facts and seek the same damages for BNYM's alleged breaches, I dismiss the breach of fiduciary duty claim as duplicative.  *See E–Global Alliances, LLC v. Anderson*, No. 10 Civ. 2844(KMK)(PED), 2011 WL 8879268, at *9 (S.D.N.Y. May 11, 2011) (dismissing breach of fiduciary duty claim seeking same damages for same alleged conduct as breach of contract claim).

---

[5] As BNYM notes, my MTD Order concluded that "Plaintiff has not alleged any circumstances extraneous to Defendant BNYM's performance of its duties under the Escrow Agreement that would establish a duty owed by Defendant BNYM to Plaintiff."  (MTD Order 23.)  I further noted that "[t]he Escrow Agreement specifically limits the 'duties, responsibilities, and obligations' of BNYM to those 'expressly set forth' in the Agreement, and requires that 'no duties, responsibilities or obligations shall be inferred or implied.'"  (*Id.* n.21 (quoting Escrow Ag. § II ¶ 1).) I find that these conclusions apply equally here as well.

### B. *Hamilton's Motion*

#### 1. **Ultra Vires Defense**

Hamilton argues that under Bermuda law, Hamilton's entry into the Escrow Agreement was *ultra vires* under the municipal corporation's constituting statutes,[6] making the agreement unenforceable against Hamilton.  The basis of Hamilton's argument is a Privy Council judgment[7] concluding that Hamilton did not have capacity to enter into a different but related agreement titled the Guarantee Agreement.[8]  As stated in my MTD Order, the "Bermuda Proceeding was limited to the enforcement of the Guarantee Agreement, whereas this case involves claims arising from the Escrow Agreement."  (MTD Order, at 18.)  However, Hamilton argues that the reasoning outlined in the Privy Council Judgment equally applies to the Escrow Agreement. Plaintiff argues that Bermuda law does not apply at all due to the Escrow Agreement's New York choice of law provision, and further argues that under Bermuda law, Hamilton's power to enter into the Escrow Agreement was reasonably incidental to powers expressly conferred on Hamilton, rendering the agreement enforceable.  Because I find that under the Privy Council Judgment, the Escrow Agreement is not *ultra vires*, I reject Hamilton's opening argument under Bermuda law and need not reach the parties' New York law arguments.

---

[6] Hamilton is a municipal corporation governed by the Municipalities Act 1923 of Bermuda ("the 1923 Act").

[7] The Judicial Committee of the Privy Council is the court of last resort for the United Kingdom overseas territories and Crown dependencies.  The Privy Council hears cases that have been appealed from the Court of Appeal of Bermuda.  The judgment at issue in this case is the Judgment on Privy Council Appeal No 0075 of 2017, dated January 21, 2019 ("Privy Council Judgment").  *See Mexico Infrastructure Finance LLC v. Corporation of Hamilton* [2019] UKPC 2, reported as *Mexico Infrastructure Finance LLC v. Corporation of Hamilton* (2019) 93 WIR 259. (*See also* Declaration of Kenneth I. Schacter in Support of Defendant Corporation of Hamilton's Motion for Summary Judgment or For Judgment on the Pleadings, Exhibit 1 (Doc. 92-1).)

[8] The Guarantee Agreement is Exhibit 5 to the Declaration of Kenneth I. Schacter in Support of Defendant Corporation of Hamilton's Motion for Summary Judgment or For Judgment on the Pleadings.  (Doc. 92-5.)

a.   <u>The Privy Council Judgment</u>

On April 11, 2012, Hamilton entered a development and lease agreement ("Development Agreement") with PLV to build a hotel complex, financing for which was to be secured through later agreements, including a Credit Agreement, the Guarantee Agreement, and Escrow Agreement.[9]  As part of the Development Agreement, Hamilton granted PLV a ground lease, which could be terminated if PLV failed to secure the funding it needed to complete the development within a specified period or if it failed to complete the hotel within the agreed timeframe.  (Privy Council Judgment ¶ 2; *see also* Development Agreement § 13.)  In the Guarantee Agreement, Hamilton agreed to provide an $18 million guarantee to PLV to help secure a loan from Plaintiff for purposes of financing the development.  At issue in the Privy Council Judgment was whether this guarantee was within Hamilton's statutory powers.

The Privy Council reasoned that to succeed in demonstrating that the Guarantee Agreement was *intra vires*, and thus enforceable, Plaintiff "must [have] show[n] that the execution of the guarantee was reasonably incidental to the development agreement or alternatively that the execution of the guarantee was itself a 'municipal purpose . . .' within section 23(1)(f) of the 1923 Act."  (Privy Council Judgment ¶ 41.)  With respect to an incidental purpose, the Privy Council stated the following:

> It is well established that there must be implied into a statutory provision constituting a public body the power to do that which is reasonably incidental to any express power. In asking whether a power is reasonably incidental to the exercise of an express power, it is necessary to examine the express power that was exercised.  Here the Corporation had power to dispose of an interest in its land and was thus able to enter into the development agreement.  It cannot be said that the guarantee was incidental to the execution of that agreement.   The development agreement deliberately distanced the Corporation from the development.  If the

---

[9] The Development Agreement is Exhibit 1 to the Reply Declaration of Kenneth I. Schacter in Further Support of Defendant Corporation of Hamilton's Motion for Summary Judgment or For Judgment on the Pleadings.  (Doc. 112-1.)  The Credit Agreement is Exhibit 4 to the Declaration of Kenneth I. Schacter in Support of Defendant Corporation of Hamilton's Motion for Summary Judgment or For Judgment on the Pleadings.  (Doc. 92-4.)

> developer did not demonstrate within a stipulated period that it had obtained the finance needed to complete the hotel, the Corporation could terminate the development agreement and the developer would never be able to complete the development. The terms of the agreement specifically provided that the Corporation and the developer were not partners for the purpose of the hotel development.

(Privy Council Judgment ¶ 42 (internal citation omitted).)  Because Hamilton and PLV were not partners for the purpose of the hotel development, the Privy Council did not view the guarantee as incidental to Hamilton's power to dispose of its interest in the land in question, as the guarantee essentially rendered Hamilton a partner in PLV's financing efforts.  With respect to a municipal purpose, the Privy Council concluded that Hamilton's "purpose . . . in giving the guarantee was to help [PLV] obtain funding for the development."  (Privy Council Judgment ¶ 58).  However, "[a]s to this [purpose]," the Privy Council concluded that "it is no part of [Hamilton's] functions to act as banker to a developer."  (*Id.*)  Because the guarantee was neither reasonably incidental to an express purpose, or itself a municipal purpose, the Privy Council concluded that the guarantee was *ultra vires*.

   b.   <u>Whether the Escrow Agreement Is Reasonably Incidental to the Development Agreement</u>

The parties agree that the Privy Council's determination of what constitutes a "municipal purpose" forecloses the argument that the Escrow Agreement was itself a "municipal purpose" within Hamilton's powers.  Thus, Plaintiff can defeat Hamilton's *ultra vires* argument under Bermuda Law only by showing that the Escrow Agreement was reasonably incidental to Hamilton's express powers, in this case "the execution of" the Development Agreement.  (Privy Council Judgment ¶ 42.)  Hamilton argues that "[w]hile the purpose of the Escrow Agreement was to assist [PLV] in the raising of finance, so that it could start the development, that does not make it (any more than the Guarantee) incidental to the power to dispose of an interest in land."

(Declaration of David Railton QC ¶ 13.3 (Doc. 115).)  I disagree.  Hamilton misses the material differences between the Guarantee Agreement and the Escrow Agreement.

As explained by the Privy Council Judgment, "[i]n asking whether a power is reasonably incidental to the exercise of an express power, it is necessary to examine the express power that was exercised."  (Privy Council Judgment ¶ 42.)  The Privy Council unambiguously stated that Hamilton "had power to dispose of an interest in its land and was thus able to enter into the development agreement."  (*Id.*)  The Privy Council further stated that "[i]f [PLV] did not demonstrate . . . that it had obtained the finance needed to complete the hotel, [Hamilton] could terminate the development agreement and the developer would never be able to complete the development."  (*Id.*)  The Escrow Agreement provision at issue in this case obligated Hamilton to review PLV's permanent loan funding documentation, and certify that PLV satisfied the conditions precedent to obtaining proper financing in furtherance of the development.  (*See* Escrow Ag. § I ¶ 3.3(a).)  Such involvement in the escrow disbursement authorization process can be said to be necessary, and thus "reasonably incidental," to the express powers outlined by the Privy Council; for if Hamilton had the power to terminate the Development Agreement based on PLV's progress in obtaining financing, it would need the ability to review PLV's financing arrangements—as called for by the Escrow Agreement—to make sure that the financing was "in substance reasonably acceptable."  (*Id.*)  This is especially likely considering that, under the Development Agreement—which the Privy Council necessarily concluded was *intra vires*—PLV was obligated to present to Hamilton its financing approval documentation.  (*See* Development Agreement § 13.)  In other words, the purpose of the Escrow Agreement was not "to assist [PLV] in the raising of finance," (Declaration of David Railton QC ¶ 13.3 (Doc. 115)), as Hamilton suggests; rather, Hamilton's approval of PLV's permanent loan funding documentation

was necessary for Hamilton's own "execution of," (Privy Council Judgment ¶ 42), the

Development Agreement, and thus reasonably incidental to its express powers.

As outlined by Plaintiff's expert, Oxford University Professor of Law Edwin Peel, the

Escrow Agreement, unlike the Guarantee Agreement, was not entered into for "purposes of some

separate and independent business of investing and trading in land." (Declaration of Edwin Peel

(Doc. 103 ¶ 23 (quoting Privy Council Judgment ¶ 22).) Instead, in the words of the Privy

Council, the Escrow Agreement's provision giving Hamilton authority over the escrow

disbursement authorization process is consistent with the Development Agreement's suggestion

that Hamilton and PLV "were not partners for the purpose of the hotel development," and left

Hamilton "distanced from the development" while preserving its "power to dispose of [its]

interest in its land." (Privy Council Judgment ¶ 42.)

Accordingly, I deny Hamilton's motion for summary judgment on the basis of its *ultra

vires* defense.

## 2. Duplicative Tort Claims

Hamilton argues that Plaintiff's negligence, breach of fiduciary duty, negligent

misrepresentation, and fraud claims are duplicative of Plaintiff's breach of contract claim.

"Under New York law, '[w]here the plaintiff and defendant are parties to a contract, and the

plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant

breached a duty 'independent' of its duties under the contract; otherwise plaintiff is limited to an

action in contract.'" *Opternative, Inc. v. Jand, Inc*., No. 17 Civ. 6936 (JFK), 2018 WL 3747171,

at *7 (S.D.N.Y. Aug. 7, 2018) (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003)).

"However, a defendant 'may also breach an independent duty in tort if the defendant goes

beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it

20

willfully intended to harm the plaintiff.'" *Id*.

For the same reasons that I grant BNYM's motion regarding Plaintiff's breach of fiduciary duty claims, and for the reasons I previously granted BNYM's motion to dismiss Plaintiff's gross negligence claim, I also grant Hamilton's motion for judgment on the pleadings regarding Plaintiff's breach of fiduciary duty and negligence claims, as Plaintiff has failed to allege any duties independent of those contained in the contract between the parties, and New York law counsels against creating additional fiduciary duties beyond those for which the parties bargained at arm's length.  Plaintiff argues in it opposition that it has properly alleged independent duties by alleging that Hamilton "failed to conduct any inquiry at all, fail[ed] to advise and warn [Plaintiff] that its funds were being requested to be paid to the PLV Directors' Personal Account, and fail[ed] to advise and warn [Plaintiff] that there was no Senior Escrow, no Senior Escrow Agreement, and no Permanent Loan Funding Agreement."  (Doc. 102, at 25.) First, these allegations do not establish the existence of any independent duties; rather, these allegations detail why Hamilton allegedly breached its obligations under the Escrow Agreement. Indeed, Plaintiff's complaint states that the Escrow Agreement itself "required [Hamilton] to, among other things, examine as to form and substance, and approve specified documents from PLV evidencing PLV's loan funding agreement, senior loan and senior escrow, and represent same to [BNYM]."  (Doc. 1-1 ¶ 55; *see also* Escrow Ag. § I ¶ 3.3(a) (stating that PLV shall deliver to Hamilton copies of the agreements "in form and substance reasonably acceptable to [Hamilton"); *id.* § I ¶ 3.3(b) (stating that Hamilton's approval of the documentation shall "not be unreasonably withheld, delayed or conditioned").)  Although Plaintiff further argues that a "fiduciary relationship was formed based on the duties that Hamilton agreed to undertake, wherein Hamilton essentially took on the role of gatekeeper," (Doc. 102, at 27), Plaintiff

overlooks the fact that the duties Hamilton agreed to undertake at all times stemmed from the

parties' contract, and the "mere[] [] restatement, albeit in slightly different language, of []

'implied' contractual obligations" does not give rise to claims for independent torts. *Clark-

Fitzpatrick, Inc. v. Long Island R. Co*., 70 N.Y.2d 382, 390 (1987). Whether Hamilton

performed these contractual obligations negligently similarly does not give rise to a separate

cause of action. *See Chase Manhattan Bank, N.A. v. Remington Products., Inc*., 865 F. Supp.

194, 200 (S.D.N.Y. 1994) ("New York does not recognize a cause of action for negligent

performance of a contract." (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co*., 70 N.Y.2d

382, 389 (1987))), *aff'd* 71 F.3d 407 (2d Cir. 1995)).

  With respect to Plaintiff's claims for fraud and negligent misrepresentation, although

Plaintiff alleges that Hamilton willfully intended to harm Plaintiff, these allegations are entirely

conclusory and fail to provide any factual context that make such allegations plausible.[10]

Plaintiff's allegations do not even attempt to establish a motive for Hamilton's alleged

misconduct, nor do they include circumstantial evidence of Hamilton's conscious misbehavior or

---

[10] I note that allegations of fraud and negligent misrepresentation sounding in fraud "are subject to a heightened pleading standard" pursuant to Federal Rule of Civil Procedure Rule 9(b), and must be pled "with particularity." *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 197 (2d Cir. 2013); Fed. R. Civ. P. 9(b). Accordingly, such allegations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata*, 723 F.3d at 197–198 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "In addition, the plaintiff must allege facts that give rise to a *strong* inference of fraudulent intent." *Id.* (emphasis in original) (internal quotation marks omitted). Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind . . . may be alleged generally." Fed. R. Civ. P. 9(b). However, this "relaxation of Rule 9(b)'s specificity requirement regarding condition of mind" is not "a license to base claims of fraud on speculation and conclusory allegations." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–291 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Finally, "[w]hile Rule 9(b) requires that 'the circumstances constituting fraud' be 'state[d] with particularity,' Fed. R. Civ. P. 9(b), it does not require factual pleadings that demonstrate the *probability* of wrongdoing." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 174 (2d Cir. 2015) (emphasis in original). "At the pleadings stage, the alleged fraud need only be *plausible* based on the complaint; it need not be more likely than other possibilities." *Id.* (emphasis in original).

recklessness.  Rather, Plaintiff's complaint asks me to infer that because PLV's loan funding and senior escrow documents did not comply with the Escrow Agreement's requirements, Hamilton's notice to the contrary must have been knowingly false and intentionally misleading. (Doc. 1-1, ¶¶ 72–86.)  Such a leap has no basis in fact and therefore cannot be made in the absence of additional factual allegations regarding Hamilton's knowledge of the deficiencies in the documentation.

Accordingly, I grant Hamilton's motion for judgment on the pleadings with respect to Plaintiff's duplicative tort claims.

### IV.    <u>Conclusion</u>

For the foregoing reasons, BNYM's motion for judgment on the pleadings, (Doc. 76), is GRANTED IN PART and DENIED IN PART.  Specifically, BNYM's motion for judgment on the pleadings with respect to Plaintiff's duplicative breach of fiduciary duty claim is GRANTED, and its remaining arguments are DENIED.  Similarly, Hamilton's motion for summary judgment and/or motion for judgment on the pleadings, (Doc. 88), is GRANTED IN PART and DENIED IN PART.  Specifically, Hamilton's motion for judgment on the pleadings with respect to Plaintiff's duplicative tort claims is GRANTED, and its motion for summary judgment on its *ultra vires* defense is DENIED.

The Clerk of Court is respectfully directed to terminate the open motions at Documents 76 and 88.  The parties shall file a joint status update within thirty days of the entry of this Opinion & Order.

SO ORDERED.

Dated: August 7, 2020
      New York, New York

Vernon S. Broderick
United States District Judge