```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/21/2020___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                          :

MEXICO INFRASTRUCTURE FINANCE,  :
LLC,                                  :
                          :
              Plaintiff,      :           17-cv-6424 (VSB)
                          :
        - against -         :       **OPINION & ORDER**
                          :
                          :
THE CORPORATION OF HAMILTON and  :
THE BANK OF NEW YORK MELLON.,   :
                          :
              Defendants.  :
                          :
----------------------------------------------------------X

<u>Appearances:</u>

Mark C. Zauderer
Craig S. Kesch
Grant Alan Shehigian
Flemming Zulack Williamson Zauderer LLP
New York, New York
*Counsel for Plaintiff*

Kenneth I. Schacter
Simon Chang
Elizabeth Irene Buechner
Morgan, Lewis & Bockius LLP
New York, New York
*Counsel for Defendant The Corporation of Hamilton*

Casey D. Laffey
Lonnie E. Klein
Reed Smith LLP
New York, New York

Tsedey A. Bogale
Morrison Cohen LLP
New York, New York

*Counsel for Defendant The Bank of New York Mellon*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Before me is Defendant the Corporation of Hamilton's ("Hamilton") motion pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and Local Civil Rule 6.3, (Doc. 131), seeking reconsideration of my August 7, 2020, Opinion & Order ("August 7 Opinion & Order"), (Doc. 130), granting in part and denying in part Hamilton's motion for summary judgment and/or judgment on the pleadings, (Doc. 88).  For the reasons that follow, Hamilton's motion is DENIED.

## I.    **Procedural History**[1]

On August 21, 2020, Hamilton filed the instant motion for reconsideration, supported by a memorandum of law.  (Docs. 131, 132.)  Plaintiff Mexico Infrastructure Finance, LLC ("MIF") filed a memorandum of law in opposition on September 4, 2020, (Doc. 133), and Hamilton filed its reply memorandum of law on September 11, 2020, (Doc. 135).  In addition to these submissions, I consider the record I considered in connection with my August 7 Opinion & Order.

## II.    **Legal Standard**

Generally, a party seeking reconsideration must show either "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701–02 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quoting *Doe v. NYC Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983))).  "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new

---

[1] I assume the parties' familiarity with the background of this action, which is more fully set forth in the August 7 Opinion & Order, available at *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, No. 17-CV-6424 (VSB), 2020 WL 4572679, at *1 (S.D.N.Y. Aug. 7, 2020).

theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'. . . ."
*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended*
(July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *Polsby v.
St. Martin's Press, Inc.*, No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18,
2000) ("[A] party may not advance new facts, issues or arguments not previously presented to
the Court." (citation omitted)).  "Rather, 'the standard for granting [a Rule 59 motion for
reconsideration] is strict, and reconsideration will generally be denied unless the moving party
can point to controlling decisions or data that the court overlooked.'" *Analytical Surveys, Inc.*,
684 F.3d at 52 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).
Similarly, Rule 60(b) provides for relief from an order for, among other reasons, "mistake,
inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief."  Fed. R.
Civ. P. 60(b).  Where the motion "merely offers substantially the same arguments . . . offered on
the original motion or attempts to advance new facts, the motion for reconsideration must be
denied."  *Silverman v. Miranda*, 2017 WL 1434411, at *1 (S.D.N.Y. Apr. 10, 2017).  The
decision of whether to grant or deny a motion for reconsideration is "within 'the sound discretion
of the district court.'"  *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753(KBF), 2012 WL
2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir.
2009)).

        "Under Rule 59(e), a district court may 'alter or amend judgment to correct a clear error
of law or prevent manifest injustice.'"  *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595
F. App'x 40, 44 (2d Cir. 2014) (summary order) (quoting *ING Global v. United Parcel Serv.
Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014) (internal quotation marks omitted)).  "The
'manifest injustice' standard is, by definition, 'deferential to district courts and provide[s] relief

only in the proverbial "rare case."'" *Id.* (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d

Cir. 2009)).  However, as the Second Circuit has observed, there is no "manifest injustice" is

where the movant's arguments for relief "'were available to the [party] [] and [the party]

proffer[s] no reason for [its] failure to raise the arguments.'"  *Id.* (quoting *In re Johns–Manville

Corp.*, 759 F.3d 206, 219 (2d Cir. 2014) (internal quotation marks omitted)).

## III.   <u>Discussion</u>[2]

Hamilton makes two arguments for reconsideration.  First, Hamilton argues that my

decision that the Escrow Agreement was "reasonably incidental" to the Development Agreement

overlooked the facts that the Development Agreement (i) had been executed more than two years

before the Escrow Agreement and was not linked to the Escrow Agreement, (ii) was not

designed to protect Hamilton's express power to dispose of its interest in land, and (iii) was not

necessary for Hamilton's execution of the development agreement.  (Doc. 131, at 7–13.)

Second, Hamilton argues that I overlooked critical provisions of Bermuda's Municipalities Act

1923 ("1923 Act"), the statute that governs Hamilton's existence and authority.  (Doc. 131, at

13–17.)  Hamilton's arguments fail to satisfy the standard for reconsideration.

Hamilton argues that the Escrow Agreement was not reasonably incidental to the

Development Agreement because the "Development Agreement was self-contained and could

operate without any additional agreement such as the later Escrow Agreement."  (Doc. 131, at 9.)

This interpretation of the evidence ignores the events leading up to the signing of the Escrow

Agreement, and a key provision of the Development Agreement.  As the Privy Council described

it, and as Hamilton recognizes:

> In August 2012, after the development agreement was executed, PLV requested
> [Hamilton] initially to provide an amount against which it could raise a bridging

---

[2] Abbreviations in citations refer to the original citations provided in the August 7 Opinion & Order.

> loan which it needed to raise in order to secure the full funding required to construct the hotel.  PLV had failed to obtain this facility elsewhere.  It therefore required this bridging loan to enable it to proceed with the development.   Lengthy negotiations ensued, and the Corporation ultimately agreed to provide a guarantee for $18m . . . to secure a loan by [MIF] to PLV, which was due to be repaid on 30 December 2014.  This loan was to enable PLV to pay a sum into an escrow account which appears to have been required so that it could raise the finance it needed to construct the hotel.

(Privy Council Judgment ¶ 4.)  And, as noted in the August 7 Opinion & Order, the Privy

Council further stated that "[i]f [PLV] did not demonstrate . . . that it had obtained the finance

needed to complete the hotel, [Hamilton] could terminate the development agreement and the

developer would never be able to complete the development."  (*Id*. ¶ 42.)  In other words, as MIF

argues, "Hamilton's argument that Section 13 of the Development Agreement allowed for

termination if PLV did not obtain satisfactory financing by August 2012 is of no moment"

because "[i]t is undisputed that the Development Agreement was never terminated in August

2012, even though PLV had not obtained any financing by that time."  (Doc. 133, at 7.)  Instead,

further agreements were signed, such as and including the Escrow Agreement, establishing an

escrow account which the Privy Council observed "appears to have been required so that [PLV]

could raise the finance it needed to construct the hotel."  (Privy Council Judgment ¶ 4.)  In

addition, although Hamilton argues that under the Development Agreement, "Hamilton had no

contractual right to review or approve the proposed financing," (Doc. 131, at 8), I disagree.

Section 13.1.3 of the Development Agreement states that the "approval of [Hamilton] of the

Financier shall not be required," if PLV obtains and delivers unequivocal written approval of the

Financier from third parties.  (Development Agreement § 13.1.3.)  However, it is undisputed that

PLV did not achieve these conditions precedent.  Therefore, the Escrow Agreement provision at

issue in this case, which obligated Hamilton to review PLV's permanent loan funding

documentation, and certify that PLV satisfied the conditions precedent to obtaining proper

5

financing in furtherance of the development, (*see* Escrow Ag. § I ¶ 3.3(a)), could be construed as necessary for Hamilton's performance of the Development Agreement, *i.e.*, its "power to dispose of an interest in its land," (Privy Council Judgment ¶ 42).  Accordingly, I find Hamilton's arguments regarding my analysis of the Escrow Agreement to be unpersuasive.[3]

Hamilton's second argument for reconsideration is that I overlooked the requirement of Section 20 of the 1923 Act that any agreement for the disposal of land, and any related agreements, be approved by the Bermuda government.  This argument is not grounds for reconsideration, however, as Hamilton did not present this argument in its opening brief despite having been aware of the argument.  Hamilton's motion for summary judgment included hundreds of pages of expert declarations in support of and in opposition to summary judgment. Hamilton now argues that this argument was properly preserved by three paragraphs in a one hundred nine-paragraph expert declaration.  Hamilton further observes that "[i]n light of the substantial briefing and the extensive and detailed expert submissions, which focused on the *ultra vires* doctrine and its relationship to MIF's tort claims, it may be that this important statutory procedure point was not highlighted and therefore went unnoticed."  (Doc. 131, at 16.) The problem with Hamilton's argument, however, is that it was Hamilton's duty to highlight any arguments it wished to present on summary judgment.  *Cf. Aiello v. Stamford Hosp*., 487 Fed. Appx. 677, 678 (2d Cir. 2012) (summary order) ("The premise of our adversarial system is that courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argument by the parties before them." (quoting *Coalition on W.*

---

[3] With respect to Hamilton's argument that the Escrow Agreement was for MIF's protection, and not Hamilton's, Hamilton's argument rests on the factually inaccurate premise that the Escrow Agreement's provisions do not at least partially benefit Hamilton.  As outlined in the August 7 Opinion & Order, and as further explained herein, the Escrow Agreement provisions at issue in this case authorized Hamilton to review PLV's financing arrangements, which empowered Hamilton to effectively terminate the Development Agreement if needed, or to continue with the agreement and therefore dispose of its interest in its land.

*Valley Nuclear Wastes v. Chu*, 592 F.3d 306, 314 (2d Cir. 2009) (quotation marks omitted)).[4]

Tellingly, Hamilton's motion for reconsideration does not even attempt to identify where in its

opening summary judgment brief the argument it is now urging me to consider was originally

presented, and my review of that brief confirms that it was not initially presented. *See Fin.*

*Guar. Ins. Co. v. Putnam Advisory* Co., LLC, No. 12 CIV. 7372 (AT), 2020 WL 264146, at *2

(S.D.N.Y. Jan. 17, 2020) (declining defendant's request to file supplemental motion for summary

judgment because argument made only in a footnote was deemed waived); *Lima v. Hatsuhana of*

*USA, Inc*., No. 13 CIV. 3389 JMF, 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) ("It is well

established that issues mentioned in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived." (internal quotation marks omitted)); *cf. United*

*States. v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived."); *City of*

*Syracuse v. Onondaga Cty*., 464 F.3d 297, 308 (2d Cir. 2006) (stating "[i]ssues not sufficiently

argued in the briefs are considered waived," and finding that argument made only in a heading

and footnote was not adequately preserved (internal quotations marks omitted)).  In its opening

brief on summary judgment, Hamilton's only arguments regarding the propriety of the Escrow

Agreement included (i) that the Escrow Agreement did not serve a municipal purpose, and (ii)

that the agreement was not reasonably incidental to Hamilton's express powers.  (Doc. 89, at 17.)

Hamilton's new legal theory is thus improper on a motion for reconsideration.

## IV.     Conclusion

For the foregoing reasons, Hamilton's motion for reconsideration is DENIED.  The Clerk

---

[4] Hamilton notes in its motion that MIF, like the Court, did not address its statutory argument either. (Doc. 131, at 16.)

of Court is respectfully directed to terminate the open motion at Document 131.

SO ORDERED.

Dated:  September 21, 2020
        New York, New York

Vernon S. Broderick
United States District Judge